Patricia P. Hollenbeck (SBN 121765)
Michelle Hon Donovan (SBN 234492)
Heather U. Guerena (SBN 238122)
Jess R. Booth (SBN 245430)
Duane Morris LLP
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619 744 2200
Facsimile:  619 744 2201
E-mail:      phollenbeck@duanemorris.com
                   mhdonovan@duanemorris.com
                   huguerena@duanemorris.com
                   jrbooth@duanemorris.com

Attorneys for Defendant,
DR. LAWRENCE P. RUDOLPH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, and JOHN WHIPPLE, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>DR. LAWRENCE P. RUDOLPH, and DOES 1 THROUGH 10 INCLUSIVE,<br><br>Defendants. | Case No.: 13-cv-01989 JVS (ANx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE PLAINTIFFS' VERIFIED FIRST AMENDED COMPLAINT [CAL. CODE CIV. PRO. § 425.16]** |

Defendant, Dr. Lawrence Rudolph ("Dr. Rudolph" or "Defendant"), hereby submits the following Memorandum of Points and Authorities in Support of his Special Motion to Strike Plaintiffs' Verified First Amended Complaint.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND ..................................................................2

    A.     The Pennsylvania and Wyoming Actions.............................................2

    B.     The Conversation Between Whipple and Rudolph................................3

    C.     The Rudolph Video ...............................................................................4

    D.     The California Action. ...........................................................................4

III.    LEGAL ANALYSIS ...............................................................................5

    A.     Plaintiffs' Amended Complaint Should be Stricken in its Entirety Pursuant to California's Anti-SLAPP Statute because Plaintiffs Have No Probability of Prevailing on Their Claims............................5

        1.     Standard for a Special Anti-SLAPP Motion................................5

        2.     Rudolph's Burden is Met Because Plaintiffs' Suit Arises From an Act in Furtherance of Defendant's Right of Petition or Free Speech in Connection with a Public Issue. ...............................................6

        3.     Plaintiffs' Claims are Not Likely to Succeed. .........................13

        4.     Plaintiffs' Request for Injunctive Relief is Improperly Brought as a Cause of Action and Their Other Causes of Action will not Succeed. .....................................................................................16

        5.     Plaintiffs are not Entitled to the Injunction Requested............16

        6.     Plaintiffs' Claim for Negligence Per Se Will Not Succeed Because Defendant Did Not Violate Section 632...................................17

        7.     Plaintiff Whipple's Privacy Claims are Not Likely to Succeed.18

        8.     Plaintiffs' Claim for Intentional Infliction Emotional Distress Will Not Succeed. ...........................................................................22

        9.     Plaintiffs' Claim for Negligent Infliction of Emotional Distress Will Not Succeed. ....................................................................23

IV.    CONCLUSION .....................................................................................24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Cannon v. City of Petaluma*
5    C 11-0651 PJH, 2011 WL 3267714 (N.D. Cal. July 29, 2011) ........................20

6

*Carson v. Depuy Spine, Inc.*
7    365 Fed. App'x. 812 (9th Cir. 2010) ...............................................................17

8

*Chamberlain v. Les Schwab Tire Ctr. of California, Inc.*
9    2:11-CV-03105-JAM, 2012 WL 6020103 (E.D. Cal. Dec. 3, 2012) ........... 14-15

10

*Davis v. Los Angeles W. Travelodge*
     CV 08-8279 CBM (CTX), 2009 WL 4260406 (C.D. Cal. Oct. 8, 2009)...........14

11

12

*Deteresa v. Am. Broad. Companies, Inc.*
     121 F.3d 460 (9th Cir. 1997) ...........................................................................19

13

14

*Dietemann v. Time, Inc.*
     449 F.2d 245 (9th Cir. 1971) ...........................................................................19

15

16

*Doe v. Gangland Prods., Inc.*
     730 F.3d 946 (9th Cir. 2013) ...........................................................................10

17

18

*Doe v. Geller*
     533 F.Supp.2d 996 (N.D. Cal. 2008)................................................................11

19

20

*Global Telemedia International, Inc. v. Doe*
     132 F.Supp.2d 1261 (C.D. Cal. 2001)...............................................................10

21

22

*Gonzalez v. Arizona*
     677 F.3d 383 (9th Cir. 2012) ...........................................................................13

23

*Jacobson, Esq. v. Schwarzenegger*
     357 F.Supp.2d 1198 (C.D. CA 2004)................................................................21

24

25

*New.Net, Inc. v. Lavasoft*
     356 F.Supp.2d 1090 (C.D. Cal. 2004)...............................................................10

26

27

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*
     946 F.Supp.2d 957 (N.D. Cal. 2013)..............................................................5-6

28

**MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANT'S SPECIAL MOTION TO STRIKE**

DM1\4537915.1

*Price v. Stossel*
   620 F.3d 992 (9th Cir. 2010) ................................................................. 6

*Reed v. Town of Gilbert, Ariz.*
   707 F.3d 1057 (9th Cir. 2013) .............................................................. 13

*Roberts v. McAfee, Inc.*
   2010 U.S. Dist. LEXIS 20455 (N.D. CA 2010) .................................. 21

*Troy Grp., Inc. v. Tilson*
   364 F. Supp. 2d 1149 (C.D. Cal. 2005) .............................................. 10

*Vess v. Ciba–Geigy Corp.*
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 6

**California Cases**

*Aisenson v. Am. Broad. Co.*
   220 Cal.App.3d 146 (1990) .................................................................. 20

*Art Movers, Inc. v. Ni West, Inc.*
   3 Cal.App.4th 640 (1992) ..................................................................... 16

*Bailey v. Brewer*
   197 Cal.App.4th 781 (2011) ................................................................... 8

*Burgess v. Superior Court*
   2 Cal.4th 1064 (1992) .......................................................................... 23

*Christensen v. Superior Court*
   54 Cal.3d 868 (1991) ........................................................................... 23

*Cochran v. Cochran*
   65 Cal.App.4th 488 (1998) ................................................................... 21

*Colgan v. Mabus*
   Case No. 11CV2278 WQH(DHB), 2012 WL 2061686, at *9 (S.D. Cal. June 6, 2012) ............................................................................................... 15

*ComputerXpress, Inc. v. Jackson*
   93 Cal.App.4th 993 (2001) ................................................................... 10

*Damon v. Ocean Hills Journalism Club*
   85 Cal.App.4th 468 (2000) ................................................................... 12

iii

*Faunce v. Cate*
  222 Cal.App.4th 166 (2013), reh'g denied (Jan. 3, 2014), review filed (Jan.
  27, 2014) ................................................................................................ 15

*Fellows v. National Enquirer, Inc.*
  42 Cal.3d 234 (1986) .............................................................................. 21

*Gilbert v. Sykes*
  147 Cal.App.4th 13 (2007) ...................................................................... 21

*Hall v. Time Warner, Inc.*
  153 Cal.App.4th 1337 (2007) .................................................................. 10

*Hill v. Nat'l Collegiate Athletic Assn.*
  7 Cal.4th 1 (1994) ................................................................................... 18

*Kiseskey v. Carpenters' Trust for So. California*
  144 Cal.App.3d 222 (1983) ..................................................................... 22

*Liberman v. KCOP Television, Inc.*
  110 Cal. App. 4th 156 (Cal. App. 2d Dist. 2003) ................................... 17

*Madrid v. Perot Sys. Corp.*
  130 Cal.App.4th 440 (2005) .................................................................... 16

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*
  48 Cal.3d 583 (1989) .............................................................................. 23

*Miller v. Nat'l Broad. Co.*
  187 Cal.App.4th 1463 (1986) .................................................................. 19

*Molien v. Kaiser Foundation Hospitals*
  27 Cal.3d 916 (1980) .............................................................................. 23

*Navellier, et al. v. Sletten*
  29 Cal.4th 82 (2002) ................................................................................. 7

*Neville v. Chudacoff*
  160 Cal.App.4th 1255 (2008) .................................................................... 8

*Noble v. Sears, Roebuck & Co.*
  33 Cal.App.3d 654 (1973) ....................................................................... 19

iv

*Ramirez v. Nelson*
   44 Cal.4th 908 (2008) .................................................................17

*Sanchez-Scott v. Alza Pharm.*
   86 Cal.App.4th 365 (2001) ..........................................................19

*Shulman v. Group W Productions, Inc.*
   18 Cal.4th 200 (1998) .................................................................18

*Taus v. Loftus*
   40 Cal.4th 683 (2007) .................................................................10

*Turnbull v. Am. Broad. Companies*, CV 03-3554 SJO (FMOX), 2005 WL
   6054964 *5-6 (C.D. Cal. Mar. 7, 2005) .......................................15

*Wilkins v. Nat'l Broad. Co., Inc.*
   71 Cal.App.4th 1066 (1999) ........................................................19

*Wilson v. Parker, Covert & Chidester*
   28 Cal.4th 811 ( 2002) ...................................................................6

*Wong v. Tai Jing*
   189 Cal.App.4th 1354 (2010) ......................................................22

*Wooden v. Raveling*
   61 Cal.App.4th 1035 (1998) ........................................................23

**State Statutes**

Cal. Civ. Code Proc. § 425.16 ...........................................................1, 9

Cal. Code Civ. Proc. § 425.16(a) ...........................................................7

Cal. Code Civ. Proc. § 425.16(b)(1) ...................................................1, 5

Cal. Code Civ. Proc. § 425.16(b)(2) .......................................................6

Cal. Code Civ. Proc. § 425.16(c) ...........................................................6

Cal. Code Civ. Proc. § 425.16(e) ...................................................7, 9, 11

Cal. Code Civ. Proc. § 425.16(e)(2) ....................................................1,7

Cal. Code Civ. Proc. § 425.16(e)(3) .............................................1, 9, 11

California Civil Code § 47...................................................................................21

California Evidence Code§ 669...................................................................17

California Penal Code § 632............................................................ 1, 5, 12-17

California Penal Code § 637.2....................................................................16

**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...............................................2

**Non-Periodical Publications**

https://www.youtube.com/watch?v=2aYY0YF4ktA ................................................4

YELP, http://www.yelp.com/about (last visited March 18, 2014) ...........................22

DM1\4537915.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     <u>INTRODUCTION</u>

Plaintiffs' Verified First Amended Complaint is a "strategic lawsuit against public participation" (SLAPP) that challenges Defendant's protected free speech conduct in violation of California's anti-SLAPP statute.  Cal. Civ. Code Proc. § 425.16.  If Defendant's conduct was "in furtherance of [his] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue," Section 425.16(b)(1) requires that the First Amended Complaint be stricken unless Plaintiffs demonstrate a probability of prevailing on their claims against Defendant.  All of Defendant's conduct complained of by Plaintiffs – Defendant's recording of the restaurant conversation and dissemination of a video via the internet – seeks to prohibit Dr. Rudolph from exercising his free speech rights to address issues of public concern.  Specifically, Defendant undertook such conduct in connection with a public issue under California Code of Civil Procedure §425.16(e)(2) because the videos at issue discuss the pending defamation claims against Safari Club International (SCI).  Defendant also undertook such conduct in connection with a public issue under California Code of Civil Procedure § 425.16(e)(3) and (4) because the videos were published on the Internet in a public forum and were created and disseminated in an effort to warn the approximately 50,000 members of SCI of the misconduct of SCI's directors.  Thus, Defendant's conduct is subject to the protections of the anti-SLAPP statute.

Plaintiffs have no probability of prevailing on their claims.  In order to prevail on the first three counts of the First Amended Complaint – a violation of California Penal Code Sections 632, injunctive relief, and negligence per se – Plaintiffs must establish that the recorded conversation was "confidential" as defined under the statute.  This Court has already held that the conversation was not confidential because there is no reasonable expectation that a conversation in a public restaurant, in presence of other patrons and staff members would not be overheard.  Plaintiffs'

1

invasion of privacy claims are insufficient because Plaintiffs fail to allege that Defendant violated any cognizable privacy interest and acted in a highly offensive manner.  Plaintiffs' emotional distress claims are insufficient because Plaintiffs fail to allege that Defendant's conduct was objectively outrageous and that they suffered any cognizable harm as a result.  Therefore, the First Amended Complaint should be stricken in its entirety, and Defendant is entitled to recover his attorneys' fees and costs incurred in the defense of this action.

## II.   FACTUAL BACKGROUND[1]

### A.   The Pennsylvania and Wyoming Actions

The legal dispute between the parties began almost two years ago and has been pending before the U.S. District Court, Western District of Pennsylvania for over a year, where Rudolph filed an action seeking damages for the defamatory conduct of SCI and Whipple (collectively, Plaintiffs).  The individual defendants, including Whipple, were dismissed on jurisdictional grounds, and Rudolph refiled against certain defendants in U.S. District Court in Wyoming.  Copies of the operative Complaints and Dockets in both the Pennsylvania and Wyoming actions are attached as Exhibits 1, 2, 4, and 5 to the Request for Judicial Notice filed in support of Rudolph's Opposition to Ex Parte Application for Temporary Restraining Order (RJN) (ECF 5-3), which is incorporated herein by reference.

As set forth in Rudolph's Complaints, the crux of the Pennsylvania and Wyoming actions is that certain members of SCI, including Whipple, conspired to defame Rudolph to ruin his reputation.  *See* RJN, Ex. 1 at ¶¶ 10-118 and Ex. 4 at ¶¶ 11-135.  SCI is a nonprofit organization of approximately 50,000 members with 194 chapters in 26 countries whose goals are to protect hunters' rights and promote wildlife conservation. Am. Compl. ¶ 5; *see also* RJN, Ex. 1 at ¶ 10 and Ex. 4 at ¶ 13.

---

[1] The averments of the First Amended Complaint are assumed to be true for the purpose of this Motion only.  Rudolph does not admit the truth of any of the allegations in the Amended Complaint and reserves all rights to dispute the same.

2

Rudolph was a prominent member of SCI.  Declaration of Rudolph ("Rudolph Dec.")
¶ 4.  He served as President of the organization for two consecutive year long terms.
Am. Compl. ¶ 9; Rudolph Dec. ¶ 7.  He then became the Chief Communications
Officer and performed public relation functions.  Am. Compl. ¶ 10; Rudolph Dec.¶ 8.
Rudolph earned $100,000 his first year in that role and he was under contract to earn
$125,000 the following year before his reputation was maliciously destroyed by other
SCI members.  Rudolph Dec. ¶ 9.  As a result of their unlawful behavior, Rudolph
was thrown out of the membership and was terminated as Chief Communications
Officer. Rudolph Dec. ¶ 11.

### B.    The Conversation Between Whipple and Rudolph.

On February 20, 2013, while the action was pending in Pennsylvania against
SCI and Whipple, Whipple met with Rudolph.  Complaint ¶ 16; Rudolph Dec. ¶ 14.
At the time the meeting took place, Whipple was President of SCI and personally
named as a Defendant in the Pennsylvania lawsuit.  Am. Compl. ¶ 18; Rudolph Dec.
¶ 15.  The conversation took place at a public restaurant called Wine Works for
Everyone.  Am. Compl. ¶ 22.  Wine Works for Everyone is a small restaurant located
in a strip mall at 26342 Oso Parkway, Suite 103, Mission Viejo California.  Am.
Compl. ¶  22; *see also* Req. Judicial Notice Supp. Mot. Dismiss (MTD RJN) Exhibits
A & B; Rudolph Dec. ¶ 14.  Wine Works for Everyone is a wine store and restaurant
that is open to the public.  Req. Judicial Notice Supp. Mot. Dismiss (MTD RJN)
Exhibits A & B Rudolph Dec. ¶ 14.  The restaurant is small and designed with family
style seating where one party often shares a large table or bench seating with other
parties.  *Id.*  During the conversation, Whipple and Rudolph discussed the facts and
circumstances of the ongoing litigation between Rudolph, Whipple and SCI.  Am.
Compl. ¶ 24; Rudolph Dec. ¶ 18.  There were numerous other patrons and employees
in the restaurant at the time the conversation took place.  Am. Compl. ¶¶ 24 and 26;
Rudolph Dec. ¶ 19.  The other patrons were sitting close enough that they could have

3

overheard the conversation.  Rudolph Dec. ¶ 20.  Throughout the meeting, restaurant staff and other patrons walked past the table.  *Id.*  There were also more than a half dozen interactions with the waiter throughout the course of the meeting.  *Id.*  At no time did Rudolph or Whipple overtly lower their voices or curtail the conversation. Rudolph Dec. ¶ 21.  There was nothing in Whipple's body language to suggest he was attempting to maintain privacy and at no time did Rudolph or Mr. Whipple indicate that the conversation was confidential.  *Id.*

### C.   **The Rudolph Video**

Rudolph created a video titled "Rudolph v. Safari Club International SCI President Tells The Truth On Video Rudolph Exonerated!!" (the "Whipple Video"). *Id.* at ¶ 22.  The video discusses the false and malicious allegations made against him by SCI and members of its Board of Inquiry ("BOI"), the defamation lawsuit filed against SCI and the BOI members, and clips of the conversation between Rudolph and Mr. Whipple where Whipple confirms that the allegations made against Rudolph were false and maliciously made for personal and political reasons.  *Id.*  The Whipple Video was published on YouTube after the Temporary Restraining Order was dissolved to be viewed by members of SCI and the public at large.  *Id.* at 23.  Rudolph's goal in creating and sharing the Whipple Video with members of SCI was to obtain evidence for use in the ongoing litigation, to influence the SCI members and administration into resolving the ongoing litigation, and to repair his reputation and stop those in power at SCI from wasting SCI's resources on unnecessary litigation because SCI decision makers are following a personal agenda *Id.* at ¶  24.  The video is currently freely viewable on the internet. YouTube, https://www.youtube.com/watch?v=2aYY0YF4ktA (last visited March 19, 2014).

### D.   **The California Action.**

On December 18, 2013, Plaintiffs filed a Verified Complaint in the Superior Court of California seeking to enjoin Rudolph from using a video recording in the

4

Pennsylvania and Wyoming actions.  Compl. 7-8.  The recording Plaintiffs seek to exclude contains portions of the February 20, 2013 conversation between Whipple and Rudolph concerning the actions pending in Pennsylvania and Wyoming, and the defamatory allegations SCI asserted against Rudolph. Compl. at ¶¶ 20-23.  A copy of the recording was filed in this action.  *See* ECF 15.  On December 23, 2013, Rudolph removed the Plaintiffs' California Action to this Court.  *See* ECF 1.  On January 16, 2014, this Court denied Plaintiffs' request for a preliminary injunction, finding that Plaintiffs were not likely to succeed in showing that Rudolph violated Section 632 of California Penal Code. *See* Order Den. Pl.'s Appl. Prelim. Inj., ECF 27.  On February 3, 2014, Plaintiffs filed an Amended Verified Complaint alleging numerous claims against Rudolph, all of which are based on Rudolph's recording of the February 20, 2013 conversation and his creation of the video containing portions of that conversation.  *See* Am. Compl.

## III.   LEGAL ANALYSIS

### A.   Plaintiffs' Amended Complaint Should be Stricken in its Entirety Pursuant to California's Anti-SLAPP Statute because Plaintiffs Have No Probability of Prevailing on Their Claims.

1.   Standard for a Special Anti-SLAPP Motion.

Although it is a state statute, California's anti-SLAPP protections apply to state law claims brought in federal court.  *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 966-67 (N.D. Cal. 2013) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999)).  The anti-SLAPP statute permits defendants to bring a special motion to strike if a cause of action against them arises "from any act . . . in furtherance of the . . . right of petition or free speech . . . in connection with a public issue," unless "the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Code Civ. Proc. § 425.16(b)(1). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon

5

which the liability or defense is based." § 425.16(b)(2).  If a defendant prevails on a motion to strike, that defendant "shall be entitled to recover his or her attorney's fees and costs." § 425.16(c).

In evaluating an anti-SLAPP motion, courts engage in a two-part inquiry. "First, a defendant must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech . . . If the defendant makes such a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1110 (9th Cir. 2003).  The plaintiff's burden is comparable to that used on a motion for summary judgment.  *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010).

> The plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. A defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.

*Id.* at 1000 (citations omitted). Evidence must be admissible and, for the purpose of the motion, is presumed true if in favor of the plaintiff. *Piping Rock Partners*, 946 F. Supp. 2d at 967 (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)).  The defendant can defeat the plaintiff's evidentiary showing by presenting evidence that establishes as a matter of law that the plaintiff cannot prevail.  *Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 821 ( 2002).

> 2. <u>Rudolph's Burden is Met Because Plaintiffs' Suit Arises From an Act in Furtherance of Defendant's Right of Petition or Free Speech in Connection with a Public Issue.</u>

A defendant's conduct falls within the provisions of the anti-SLAPP statute if he undertook such conduct "in connection with a public issue," including

6

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

§ 425.16(e).  The defendant's threshold burden must be construed broadly "to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."  § 425.16(a). Thus, a defendant need show only that the challenged cause of action arose from one of the categories of protected activities listed in Section 425.16(e).  *Navellier, et al. v. Sletten*, 29 Cal.4th 82, 88 (2002).  Here, Plaintiffs' lawsuit arises directly from Rudolph's acts of recording the restaurant conversation and publishing portions of it to the internet.  That is, but for Rudolph's actions concerning the recording, Plaintiffs would have no reason to sue Rudolph. Rudolph's conduct, however, clearly is protected by categories two, three, and four of the anti-SLAPP statute.

a.   Defendant's Conduct Constitutes a Statement Made in Connection with an Issue Under Consideration by a Judicial Body Under Category Two of Section 415.16(e).

Rudolph's conduct falls within category two of Section 425.16(e) if his statements were "made in connection with an issue under consideration or review by a . . . judicial body, or any other proceeding authorized by law." § 425.16(e)(2).  Thus, "statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated

7

matter concerns a matter of public interest." *Bailey v. Brewer*, 197 Cal.App.4th 781, 789 (2011) (quoting *Rohde v. Wolf*, 154 Cal.App.4th 28, 35 (2007)).  A statement is "in connection with" an issue under consideration by a court in a judicial proceeding if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding.  *Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1266 (2008) (holding that a letter sent to an employer's customers concerning an employee's alleged misappropriation of customer lists was in connection with issues in an anticipated lawsuit).

The Whipple Video concerns issues germane to Defendant's defamation claims against Plaintiffs in the Western District of Pennsylvania.[2]  Tellingly, the title of the video is "Rudolph v. Safari Club International SCI President tells the truth on video Rudolph Exonerated!!"  Thus, it is immediately apparent that the Whipple Video relates to a substantive issue in the pending litigation.  In the Whipple Video Rudolph specifically discusses the litigation pending in Wyoming and Pennsylvania and discusses the allegations that Plaintiffs defamed him by falsely accusing him of wrongdoing, expelling him from SCI, and stripping him of his hunting awards.  Rudolph's video, in an effort to clear his name, directly addressed Plaintiffs' accusations and his expulsion:

> I have now engaged in a legal action against SCI and Ralph Cunningham who lead this board inquiry against me for his own, self-serving reasons.  And its members Larry Higgins, Dave Small, Joe Hanley and Scott Chappin.  You know it is time to reveal the truth and repair the damage that they have done to my reputation.  This board of inquiry manufactured and created issues and timed their defamation in such a way that these false accusations were formally released by Ralph Cunningham to the Board of Directors a mere one hour

---

[2] Plaintiff Whipple was dismissed from Defendant's lawsuit on March 20, 2013 pursuant to Plaintiff Whipple's Motion to Dismiss for lack of Jurisdiction. Def.'s Ex. 2, No. 5-5.

8

before the annual 2012 SCI elections for its officers.   In spite of several board members citing concerns of legal action, Cunningham moved forward even violating the stated rules and confidentiality of the BOI to achieve their self-serving agenda.   In hunting terms, we call this a hard shot and its was designed to kill me and any chance to complete the reforms that I had been leading.   Make no mistake.   This was done with malice and design crafted with lies, mistruths, and slander.   Whipple Video 2:53-4:05.

The purpose of creating and sharing the Whipple Video with members of SCI was to obtain evidence for use in the ongoing litigation, influence the SCI members and administration into resolving the ongoing litigation, repair his reputation and stop those in power at SCI from wasting SCI's resources on unnecessary litigation because SCI decision makers are following a personal agenda.   Rudolph Dec. ¶ 24.   Rudolph directed the video and made it available to the defendants in the pending litigation as well as the 50,000 members of SCI, all of whom have a have an interest in the proceeding.

For these reasons, Rudolph's video was a statement made in connection with an issue under consideration in a judicial proceeding.   Moreover, Rudolph's act of recording of his interview of Whipple was an act in furtherance of his video statement – i.e., the interview was necessary step toward the completion of Rudolph's video statement.   Thus, the conduct of which Plaintiffs complain is protected by category two of Section 425.16.

        b.      <u>Defendant's Conduct Constitutes a Statement in a Public Forum in Connection with an Issue of Public Interest Under Categories Three and Four of Section 415.16(e).</u>

Categories three and four of Section 425.16(e) are closely related. Rudolph's conduct falls within category three if he (1) made a statement in a public forum (2) in connection with an issue of public interest. § 425.16(e)(3).   California courts define "public forum" as used in Section 425.16 as "a place that is open to the public where

9

information is freely exchanged." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1107 (C.D. Cal. 2004) (citations omitted). "Under its plain meaning, a public forum is not limited to a physical setting, but also includes other forms of public communication such as electronic communication media like the internet." *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1006 (2001) (quoting *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 475 (2000)).

Rudolph's conduct falls within category four if he was "engaged in conduct (1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) (citing § 425.16(e)(4)). "California courts have held that pre-publication or pre-production acts such as investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech." *Id.* (holding defendants' acts of interviewing plaintiff for a documentary and broadcasting that interview were in furtherance of defendants' free speech rights); *see e.g.*, *Taus v. Loftus*, 40 Cal.4th 683, 712-13 (2007); *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337, 1347-48 (2007).

As for the public interest requirement of these categories, an issue is of public interest if it "impacts a broad segment of society or affects a community in a manner similar to that of a governmental entity." *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1153 (C.D. Cal. 2005) (quoting *O'Meara v. Palomar-Pomerado Health Sys.*, 125 Cal.App.4th 1324, 1336 (2005)); *see e.g.*, *Global Telemedia*, 132 F. Supp. 2d at 1264 (holding statements about a company made in internet chat room concerned public interest because company had many investors and frequently promoted itself in the media to influence current and prospective investors); *ComputerXpress*, 93 Cal.App.4th at 1007-08 (holding statements about a company posted on internet concerned public interest because company had many investors and promoted itself through press releases). California courts hold that public forums include internet websites that host user-submitted messages and offer free and open public access to those messages. *See e.g.*, *Id.* at 638; *Global Telemedia International, Inc. v. Doe*, 132

10

F. Supp. 2d 1261, 1264 (C.D. Cal. 2001).

Plaintiffs' Amended Complaint concerns only Rudolph's decision to create and distribute a video message concerning Plaintiffs via YouTube.

> The YouTube internet video website is an entirely user-driven medium.  Anyone with access to the internet can sign up for a YouTube account and upload any video file to YouTube's servers so that the file may be accessed and viewed anywhere in the world, all for free. . . . Politicians, social activist organizations and nonprofit groups use YouTube to spread their messages.  By nearly eliminating the cost of mass media distribution, YouTube offers its users unparalleled opportunities for free expression.

*Doe v. Geller*, 533 F. Supp. 2d 996, 1001 (N.D. Cal. 2008) (citations omitted). Because YouTube clearly qualifies as a public platform, Rudolph made his statements in a public forum as required for protection under Section 425.16(e)(3).  Moreover, Rudolph at all times acted in furtherance of his right of free speech as required by category four of Section 425.16(e) – i.e., he investigated Plaintiffs, interviewed Whipple, and published that interview along with his own statements about Plaintiffs. Such conduct represents a quintessential exercise of free speech.

Rudolph's conduct and statements also concerned a matter of public interest as required by categories three and four. SCI is a world-wide organization that promotes wildlife conservation and is comprised of approximately 50,000 members.  Am. Compl. ¶ 6.  Whipple is a former President of SCI, and he held that office when Rudolph was expelled from the organization. Am. Compl. ¶¶ 18-19.  Rudolph was a long-time member of SCI and served the organization in numerous roles, including President from 2009-2011 and then Chief Communications Officer, until he was expelled. Def.'s Decl. ¶¶ 4-9, No. 5-1.  The fact that the Whipple Video was created and published to the 50,000 members of SCI to influence SCI's actions in connection with the Pennsylvania lawsuit and Rudolph's leadership status within SCI shows that,

11

for purposes of the intended audience, the video was in connection with an issue of public interest – the governance of and litigation involving SCI.  Rudolph Dec. ¶ 24; *Damon, supra*, 85 Cal.App.4[th] 479 (statements made to 3,000 members of a homeowners associate regarding association governance were a matter of public interest under 425.16(e)(3)). In the video Rudolph states:

> It was during my many years in the senior leadership of Safari Club International, that it became apparent to myself and others that SCI was being abused, mismanaged and controlled by several of its past presidents for personal financial benefit.  This small but powerful group controlled SCI's finances, its revenue stream, and its bylaw process.  They fought any and all positive reforms, their personal agenda and benefit overshadowing the best interest of SCI and hunting.

Whipple Video 1:20-1:57

In addition, because Rudolph published his video on YouTube, he made his message available not just to SCI's members but to anyone in the world who might be concerned about or interested in SCI.  As such, Rudolph's conduct and statements regarded issues of public interest.

Thus, Rudolph's conduct squarely fits within the categories of protected conduct identified in the anti-SLAPP statute.  As such, Rudolph has satisfied his threshold burden of showing that cause of action against them arises from an act in furtherance of the right of petition or free speech in connection with a public issue. For the reasons set forth below, Plaintiffs cannot demonstrate that their claims are likely to prevail.

/ / /

/ / /

/ / /

/ / /

12

3. <u>Plaintiffs' Claims are Not Likely to Succeed.</u>

a. <u>The Court Has Determined that Plaintiffs Are Not Likely to Succeed on the Section 632 Claims.</u>

This Court has already determined that Plaintiffs are unlikely to succeed on the California Penal Code section 632 ("Section 632") claims because the conversation at issue was not confidential.  On January 16, 2014, this Court issued an Order Denying Plaintiffs' Application for Preliminary Injunction holding that Plaintiffs have "not shown a likelihood of success because there is no reasonable expectation that the communications between Whipple and Rudolph would be free from recording or being overheard by others."  (ECF No. 27 at 4.)  The Court further explained: "The February 20 meeting was held in a public place…. The nature of the place was not conducive to an expectation of confidentiality. . . . .[T]here were numerous opportunities to be overheard, and no efforts at confidentiality were taken ." *Id*. at 4-5.  The Court concluded:  "The conversation does not meet the statutory definition of a confidential communication because there was no reasonable basis for a belief that the conversation would not be overheard." *Id*. at 5.

"Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th Cir. 2012) (citation omitted); *see also Reed v. Town of Gilbert, Ariz*., 707 F.3d 1057, 1067 (9th Cir. 2013) (finding that conclusions of law made in an order reviewing the denial of a preliminary injunction constituted the law of the case).

In this case, the Court has had the opportunity to review the recording in question and has made a legal determination that the recording does not meet the statutory definition of a confidential communication because there was no reasonable basis for a belief that the conversation would not be overheard.  Thus, the Court has

13

DM1\4537915.1

already determined that Plaintiffs are not likely to succeed on the merits of their claims and no further analysis is needed.

### b.   Plaintiffs' Claim under Section 632 is Legally Insufficient.

Plaintiffs have no plausible claim under Section 632. This statute bars the intentional recording of a "confidential communication" without the consent of all parties to the communication. Plaintiffs must prove that the conversation was a "confidential communication," which is defined as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but *excludes a communication made in a public gathering* or in any legislative, judicial, executive or administrative proceeding open to the public, *or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard* or recorded.

Cal. Penal Code § 632(c) (emphasis added).

Plaintiffs admit that the recording took place in the public area of a restaurant, in the presence of other patrons and employees, and the recording itself confirms as much. Am. Compl. ¶¶ 21-23.  Therefore, the recording was made in a public place and is expressly exempted under the statute.  *Davis v. Los Angeles W. Travelodge*, CV 08-8279 CBM (CTX), 2009 WL 4260406 *2 (C.D. Cal. Oct. 8, 2009) (finding that there was no reasonable expectation of privacy because the conversation took place in a hotel lobby, a public place); *Chamberlain v. Les Schwab Tire Ctr. of California, Inc.*, 2:11-CV-03105-JAM, 2012 WL 6020103 *3 (E.D. Cal. Dec. 3, 2012) (finding that there was no reasonable expectation of privacy because the conversation took place inside a tire store, a public place).

Moreover, Plaintiffs had no objectively reasonable expectation that the conversation would not be overheard.  The parties were in a public area of a small

14

restaurant where numerous other patrons were seated and wait staff walked past at regular intervals. Am. Compl. ¶¶ 21-23; MTD RJN Ex. A and B. In other words, the conversation took place in a public place and in the presence of restaurant employees and customers. Therefore, Plaintiffs had no objectively reasonable expectation that the conversation would not be overheard. *See Chamberlain*, 2012 WL 6020103 *3 ("Because the conversations occurred in public places with people around, the Court finds that neither Mr. Dollarhide nor Mr. Miller had a reasonable expectation that their conversations would not be overheard or recorded."); *Turnbull v. Am. Broad. Companies*, CV 03-3554 SJO (FMOX), 2005 WL 6054964 *5-6 (C.D. Cal. Mar. 7, 2005) (upholding jury special verdict that a reasonable person would have expected that the conversation may be overheard when other people are in the room).

In addition, at the time of the conversation, Whipple was President of SCI, and both SCI and Whipple were named defendants in the defamation lawsuit brought by Rudolph in the Western District of Pennsylvania. The conversation between Whipple and Rudolph specifically addressed the claims made by Rudolph against Plaintiffs in the lawsuit. As is clear in the video, Whipple was aware of the actions he and SCI took against Rudolph and clearly understood he was a defendant in an action filed by Rudolph. Yet, Whipple freely participated in the conversation and exonerated Rudolph. Given the setting and the content of the discussion, Whipple could not have had any reasonable privacy expectation.

In light of the foregoing, including the setting of their conversation and their status as adverse litigants in a pending suit, the conversation between Rudolph and Whipple was not a confidential communication. Thus, Plaintiffs have no cognizable claim under Section 632 and cannot meet their burden under the anti-SLAPP statute.

/ / /

/ / /

/ / /

/ / /

15

4.      <u>Plaintiffs' Request for Injunctive Relief is Improperly Brought as a Cause of Action and Their Other Causes of Action will not Succeed.</u>

Injunctive relief is an equitable remedy, not a cause of action.  *See Colgan v. Mabus*, Case No. 11CV2278 WQH(DHB), 2012 WL 2061686, at *9 (S.D. Cal. June 6, 2012) ("Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action.") (quoting *Cox Communications PCS, L.P. v. City of San Marcos*, 204 F.Supp.2d. 1272, 1283 (S.D. Cal. 2002)); *see also Faunce v. Cate*, 222 Cal.App.4th 166, 173 (2013), reh'g denied (Jan. 3, 2014), review filed (Jan. 27, 2014) (citing *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1361 n.2 (2010).  As such, Plaintiffs' second cause of action fails on this ground alone.  For this reason alone, this "claim" should be stricken from Plaintiffs' Amended Complaint.

Moreover, injunctive relief is appropriate only when there is a threat of continuing misconduct.  *Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 463 (2005) (citing Cal. Code Civ. § 525).  "A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate."  *Art Movers, Inc. v. Ni West, Inc.*, 3 Cal.App.4th 640, 646 (1992).  Thus, Plaintiffs are entitled to an injunction only if they are successful in proving their other causes of action.  For the reasons discussed herein, Plaintiffs cannot succeed on their remaining claims.  As such, they cannot meet their burden under the anti-SLAPP statute.

5.      <u>Plaintiffs are not Entitled to the Injunction Requested.</u>

Even if Plaintiffs were able to assert an independent claim for injunctive relief, Plaintiffs' claim would fail because Plaintiffs' seek to enjoin and restrain Rudolph from republishing and disseminating the recording.  Plaintiffs are not entitled to this relief because their sole cause of action under Penal Code section 632 ("Section 632") does not prohibit the disclosure of a recording made in violation of the statute.

16

Injunctive relief for violation of Section 632 is limited to injunctions preventing further violations of the statute.  Penal Code section 637.2 states that injunctive relief is available to enjoin and restrain a party from any further violations of the statute:

> Any person may, in accordance with Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure, <u>bring an action to enjoin and restrain any violation of this chapter,</u> and may in the same action seek damages as provided by subdivision (a). [emphasis added]

"Cal. Penal Code § 632 does not prohibit the disclosure of information gathered in violation of its terms." *Liberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 167 (Cal. App. 2d Dist. 2003).  Thus, even if Plaintiffs were able to establish that they were entitled to an injunction (which they cannot), injunctive relief would be limited to enjoining Rudolph from making further recordings of confidential communications. Plaintiffs cannot obtain an injunction preventing the disclosure of the recording. Accordingly, Plaintiffs' claim for an injunction fails as a matter of law and does not meet their burden under the anti-SLAPP statute.

> 6.   <u>Plaintiffs' Claim for Negligence Per Se Will Not Succeed Because Defendant Did Not Violate Section 632.</u>

Negligence per se is not a separate cause of action but an application of an evidentiary presumption provided by Section 669 of the California Evidence Code. *Carson v. Depuy Spine, Inc.*, 365 Fed. App'x. 812, 815 (9th Cir. 2010).  To claim negligence per se, a plaintiff must allege that (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused injury; (3) the injury resulted from an occurrence that the enactment was designed to prevent; and (4) the plaintiff fits within the class of persons for whose protection the enactment was adopted.  *Ramirez v. Nelson*, 44 Cal.4th 908, 917-18 (2008) (citing § 669).

In support of this claim, Plaintiffs seek to prove that Rudolph violated Section

17

632 of the California Penal Code. Am. Compl. ¶ 47.  For the reasons discussed above, however, Plaintiffs' Amended Complaint fails to show with any plausibility that Rudolph violated Section 632.  Plaintiffs had no reasonable expectation of privacy in the recorded conversation.  Moreover, this Court already denied Plaintiffs' request for a temporary restraining order *for the same reason*. Order Den. Pl.'s Appl. for Prelim. Inj. 4-5, Jan. 16, 2014.  Because Plaintiffs cannot show that Rudolph violated Section 632, their claim for negligence per se will not succeed.

       7.    <u>Plaintiff Whipple's Privacy Claims are Not Likely to Succeed.</u>

           a.    <u>Plaintiff Whipple Has No Claim for Invasion of Privacy Because He Had No Expectation of Privacy and Defendant's Conduct was not Highly Offensive.</u>

California recognizes four categories of activities that violate common law privacy protections: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 24 (1994) (citing Prosser, *Privacy*, 48 Cal. L. Rev. 381, 389 (1960)).  Whipple's first privacy claim is for intrusion in private matters, which the California Supreme Court summarized as follows:

> [T]he action for intrusion has two elements: (1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person. . . .  To prove actionable intrusion, the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surroundings, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.

*Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 231-32 (1998).

First, Rudolph's conduct did not constitute an intrusion into any cognizable

18

privacy interest of Whipple.  For the reasons discussed above, Whipple could not have had any reasonable expectation of privacy in his conversation with an adverse litigant in a restaurant open to the public and with other patrons and employees nearby.  As is clear in the video, Whipple spoke freely, with knowledge of the attending circumstances, and in a public place in the presence of others.  Thus, Whipple enjoyed no privacy in his conversation with Rudolph.

Second, the Court, as a matter of law, must preliminarily determine whether Rudolph's conduct was highly offensive in discerning the existence of a cause of action for invasion of privacy.  *Sanchez-Scott v. Alza Pharm.*, 86 Cal.App.4th 365, 376 (2001); *Wilkins v. Nat'l Broad. Co., Inc.*, 71 Cal.App.4th 1066, 1075-76 (1999) (citing Restatement (Second) of Torts § 652B (liability exists only "if the intrusion would be highly offensive to a reasonable person")).  "A court determining the existence of 'offensiveness' would consider the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded."  *Wilkins*, 71 Cal.App.4th at 1075-76 (quoting *Miller v. Nat'l Broad. Co.*, 187 Cal.App.4th 1463, 1483-84 (1986)).

California courts typically limit application of this tort to scenarios involving an unauthorized intrusion into a private place.  *See e.g.*, *Miller*, 187 Cal.App.4th 1463 (news team entered a bedroom without authorization); *Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654 (1973) (private investigator obtained access to a hospital room by deception); *Dietemann v. Time, Inc.*, 449 F.2d 245 (9th Cir. 1971) (defendant gained entrance to a home by subterfuge). In a case involving facts similar to those Plaintiffs complain of, the Ninth Circuit held that a reporter did not act offensively when he recorded a conversation with a woman who "spoke voluntarily and freely with an individual whom she knew was a reporter." *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 466 (9th Cir. 1997).

Whipple can offer nothing to support a finding that Rudolph's conduct was

19

DM1\4537915.1

highly offensive.  As discussed above, the parties' conversation took place in a restaurant open to the public and at a time when other patrons and employees of the restaurant were present. Moreover, the parties were adverse litigants at the time of the conversation, and the video makes clear that Whipple knew as much – yet he freely choose to discuss the issues of that suit with Rudolph.  Thus, much like the reporter in *Deteresa*, Rudolph did not act in a highly offensive manner in choosing to record that conversation or publish portions of it.  Thus, Whipple cannot support his claim that Rudolph invaded his privacy.

        b.     <u>Plaintiff Whipple Has No Claim for False Light Because Defendant Did Not Generate False and Offensive Publicity Concerning Whipple.</u>

A claim for false light requires that "(1) the defendant caused to be generated publicity of the plaintiff that was false or misleading, (2) the publicity was offensive to a reasonable person, and (3) the defendant acted with actual malice."  *Cannon v. City of Petaluma*, C 11-0651 PJH, 2011 WL 3267714 *3 (N.D. Cal. July 29, 2011) (citing *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 238-39 (1986)). "Photographs are not actionable if they are fair and accurate depictions of the person and scene in question, even if they place the person in a less than flattering light, so long as the photographs do not surpass the limits of decency by being highly offensive to persons of ordinary sensibilities." *Aisenson v. Am. Broad. Co.*, 220 Cal.App.3d 146, 161 (1990).

Whipple cannot demonstrate that Rudolph's publication placed him in a false light.  Whipple does not deny that he is he person shown in the video, and he cannot maintain that the video, which merely shows him having a conversation in a restaurant, was indecent or offensive to a person of ordinary sensibility.  Moreover, Whipple does not deny the truth of any of the statements, whether made by himself or Rudolph, in the video.  In addition, Whipple makes no allegations to support that any publicity generated by the video would be highly offensive to a reasonable person –

20

nor could he, as the video merely shows Whipple giving his own opinions on a pending lawsuit and Rudolph's reasonable response to the same. Because Whipple cannot show that Rudolph generated false or misleading publicity that was highly offensive, Whipple will not succeed on his claim for false light.

c.   Plaintiff Whipple Has Not Sufficiently Pled a Claim for False Light.

Under California law, claims for false light invasion of privacy and defamation are in essence equivalent. *Fellows v. National Enquirer, Inc.*, 42 Cal.3d 234, 248, n. 12 (1986); *Roberts v. McAfee, Inc.* 2010 U.S. Dist. LEXIS 20455 (N.D. CA 2010) ("[A] false light action is in substance equivalent to a defamation suit."). In California, claims for defamation, especially ones for libel, are subject to an enhanced pleading standard; a claim for libel "must be specifically identified, if not pleaded verbatim, in the complaint." *Gilbert v. Sykes*, 147 Cal.App.4th 13, 31-32 (2007). "Even under liberal federal pleading standards, 'general allegations of the defamatory statements' which do not identify the substance of what was said are insufficient." *Jacobson, Esq. v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216 (C.D. CA 2004) (superseded by statute on different point of law).

Plaintiffs' false light claim is in essence equivalent to a claim for libel (as opposed to slander) because the claim is based on the publication of the YouTube video. (Amended Complaint 59; *see also*, Civil Code § 47 (defining libel).) Therefore, Plaintiff was required to plead in the Amended Complaint the exact statement supporting the cause of action for false light. Plaintiffs failed to do so. (See, Amended Complaint ¶¶ 58-64.) Due to this fatal pleading flaw, Plaintiffs will be unable as a matter of law to meet their burden under the anti-SLAPP statute. *See, Gilbert, supra*, 147 Cal.App.4th at 31 (the complaint must be legally sufficient for a defendant to meet their anti-SLAPP burden.).

DM1\4537915.1

8.   <u>Plaintiffs' Claim for Intentional Infliction Emotional Distress Will Not Succeed.</u>

To prove intentional infliction of emotional distress, the plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998).  The conduct complained of "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Whipple cannot show that Rudolph's conduct was extreme or outrageous.  For the reasons discussed above concerning Whipple's privacy claims, there was simply nothing outrageous or offensive about Rudolph's conduct.  If anything, Rudolph's conduct exemplified newsgathering activities commonly engaged in by public media – i.e., Rudolph recorded an interview in a public place and released it for persons interested in SCI and its governance to view.  In addition, the video simply does not contain any kind of threat or other abusive language to support this claim.  *See e.g.*, *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal.App.3d 222, 229-30 (1983).  The video merely contains Whipple's own statements and Rudolph's comments concerning the same.  Thus, Whipple cannot claim that Rudolph's conduct was extreme or outrageous.

Nor can Whipple claim that he suffered severe emotional distress.  Indeed, Whipple's Amended Complaint is devoid of any factual allegations of emotional distress.  To make out such a claim, Whipple must prove any distress he suffered was not merely trivial or transient – generally, "emotional distress may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry."  *Wong v. Tai Jing*, 189 Cal.App.4th 1354, 1376 (2010) (quoting *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970)).  In *Wong*, the plaintiff's "alleged emotional reaction to

22

being professionally criticized in a Yelp review . . . [did] not constitute the sort of severe emotional distress of such lasting and enduring quality that no reasonable person should be expected to endure."[3] *Id.* at 1377.  Whipple's claim closely resembles the claim in *Wong* in that Rudolph's video was essentially a criticism of the way in which Whipple and SCI treated him.  As such, the conduct of which Whipple complains cannot support a finding that he suffered severe emotional distress.  For these reasons, Whipple's claim for intentional infliction of emotional distress fails.

9.     <u>Plaintiffs' Claim for Negligent Infliction of Emotional Distress Will Not Succeed.</u>

"[T]he negligent causing of emotional distress is not an independent tort but the tort of negligence.  The traditional elements of duty, breach of duty, causation, and damages apply."  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 588 (1989) (citations omitted).  The California Supreme Court has allowed plaintiffs to bring negligent infliction of emotional distress actions as "direct victims" in only three types of factual situations: (1) the negligent mishandling of corpses, *Christensen v. Superior Court*, 54 Cal.3d 868 (1991); (2) the negligent misdiagnosis of a disease that could potentially harm another, *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916 (1980); and (3) the negligent breach of a duty arising out of a preexisting relationship, *Burgess v. Superior Court*, 2 Cal.4th 1064 (1992).  "Direct victim" cases are cases based upon the violation of a duty owed directly to the plaintiff rather than the plaintiff witnessing an injury to someone else.  *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1038 (1998).

There is nothing to support a finding that Rudolph owed any duty to Whipple not to comment on the actions of Whipple and SCI.  Further, even if Rudolph did owe such a duty to Whipple, Whipple can present no evidence that Rudolph violated that

---

[3] Yelp is a popular internet website that hosts over 53 million user-submitted reviews of "businesses like dentists, hair stylists and mechanics." YELP, http://www.yelp.com/about (last visited March 18, 2014).

duty.  The discussions above demonstrate that Rudolph did not violate any cognizable privacy interest of Whipple, who freely spoke to Rudolph and commented on a pending lawsuit.  Last, as discussed regarding Whipple's IIED claim, Whipple could not have alleged any cognizable damages from Rudolph's conduct.  Thus, Whipple will not succeed on his claim for negligent infliction of emotional distress.

## IV.   CONCLUSION

For the foregoing reasons, Rudolph respectfully requests that the Court strike Plaintiffs' Amended Verified Complaint with prejudice, in accordance with California's anti-SLAPP statute and award Rudolph his reasonable attorneys' fees in defending this action.

Respectfully submitted,

Dated: March 19, 2014                         **DUANE MORRIS LLP**

By:_____/s/ *Patricia P. Hollenbeck*_____
     Patricia P. Hollenbeck
     Jess R. Booth
     Michelle Hon Donovan
     Heather U. Guerena

     Attorneys for Defendant,
     DR. LAWRENCE P. RUDOLPH

24